Rel: March 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

————————————————

## CL-2022-0751

————————————————

## Clarence G. Shanklin, Jr.

### v.

## Rahamah Brook Shanklin and Judy Ann Rowe

### Appeal from Walker Circuit Court
### (DR-10-277.01)

THOMPSON, Presiding Judge.

Clarence G. Shanklin ("the father") appeals the judgment of the Walker Circuit Court ("the trial court") denying his motion for relief from a judgment entered on January 28, 2015, that awarded Judy Ann Rowe ("the maternal great-grandmother") and Henry McDonald ("the maternal

great-grandfather") custody of the father's two children born in December 2005 and September 2007. We affirm.

The record indicates that the father and Rahamah Brook Shanklin ("the mother") were married in 2004, that two children were born of the marriage, and that in 2010, the trial court entered a judgment divorcing the mother and the father. The divorce judgment awarded the mother and the father joint legal custody of the children, the father sole physical custody of the children, and the mother visitation that was to be supervised by the maternal great-grandmother.

In May 2011, the father filed a custody-modification petition alleging that a material change in circumstance had occurred that warranted a suspension of the mother's visitation. Specifically, the father alleged that the children were not safe visiting with the mother because the mother had withheld the older child from school, that she had taken the younger child without permission and had refused to return him, and that she had suffered and continued to suffer from substance-abuse issues. On November 19, 2013, the maternal great-grandparents filed in the trial court a motion to intervene in the father's

custody-modification action. They asserted as grounds supporting their

motion:

> "1. That the [maternal great-grandparents] have a bona fide interest in the outcome of the pending pleadings.
>
> "2. That it is not in the best interest of the minor children[, who were seven and six years old,] to allow custody to remain with [the father or the mother].
>
> "3. That the mother of the minor children cannot provide a stable home for the minor children, she is unemployed, and [she] lives with the [maternal] great-grandparents.
>
> "4. That the father is employed and works all over the state. He lives in another county and would be unable to see that the minor children were in school."

The maternal great-grandparents asked the trial court to grant their

motion to intervene and to "allow a petition to be filed and heard by the

court at a later date." The record does not indicate that the trial court

granted the maternal great-grandparents' motion to intervene or that the

maternal great-grandparents filed a subsequent petition in the trial

court.[1] Rather, the record reflects that on January 28, 2015, the trial

court entered a judgment. The judgment's preamble reads:

---

[1]In D.K. v. S.M.S., 297 So. 3d 466 (Ala. Civ. App. 2019), this court held that because the parties and the juvenile court had treated the paternal aunt and uncle, who had moved to intervene, as intervenors in the termination-of-parental-rights action, we would also consider the

3

> "Whereas, [the father having] filed a petition for modification in the [trial court] and the maternal great-grandparents having filed a motion to intervene, the parties wishing to settle their differences in an amicable manner, the parties have reached an agreement, and it is the opinion of this court that the following [judgment] is due to be entered."

The judgment incorporated a November 19, 2013, agreement entered into by the mother, the father, and the maternal great-grandparents and awarding the maternal great-grandparents custody of the children, the mother visitation that was to be supervised by the maternal great-grandmother, and the father visitation. The trial court ordered both the mother and the father to pay the maternal great-grandparents child support.

On May 10, 2022, the father filed in the trial court a motion which in substance constituted a Rule 60(b)(4), Ala. R. Civ. P., motion seeking relief from the January 28, 2015, judgment.[2] The father stated in his

_____

paternal aunt and uncle as intervenors and parties to the termination-of-parental-rights action and its appeal. Similarly, in this case, the mother, the father, and the trial court treated the maternal great-grandparents as parties to the custody-modification action. Accordingly, for purposes of this appeal, we will treat the maternal great-grandparents as parties to the custody-modification action.

[2]Although the father styled his pleading as a "motion to dismiss for lack of jurisdiction," the substance of the father's pleading requested relief is pursuant to Rule 60(b)(4), Ala. R. Civ. P. See D.H. v. V.P., [Ms.

motion that although the trial court had awarded the maternal great-grandparents custody of the children in the January 28, 2015, judgment, the maternal great-grandparents never had exclusive control or custody of the children. The father asserted that the trial court should have construed the allegations in the maternal great-grandparents' motion to intervene as allegations that the children were dependent and transferred the case to the appropriate juvenile court, which has exclusive jurisdiction over dependency actions. See § 12-15-114(a), Ala. Code 1975 ("A juvenile court shall exercise exclusive original jurisdiction of juvenile court proceedings in which a child is alleged … to be dependent, or to be in need of supervision."), and P.S.R. v. C.L.P., 67 So. 3d 917 (Ala. Civ. App. 2011). The father further argued that after the filing of the maternal great-grandparents' motion to intervene on November 19, 2013, which he claims made allegations that the children

---

2200888, Dec. 3, 2021] ___ So. 3d ___ (Ala. Civ. App. 2021); and Ex parte Alfa Mut. Gen. Ins. Co., 684 So. 2d 1281, 1282 (Ala. 1996)(quoting Union Springs Tel. Co. v. Green, 285 Ala. 114, 117, 229 So. 2d 503, 505 (1969))("The 'character of a [motion] is determined and interpreted from its essential substance, and not from its descriptive name or title.'"). A Rule 60(b)(4) motion may be brought at any time. L.R.B. v. J.C., 263 So. 3d 1068, 1069 (Ala. Civ. App. 2018).

were dependent, the trial court no longer had subject-matter jurisdiction to determine the custody of the children and, consequently, the January 28, 2015, judgment awarding custody of the children to the maternal great-grandparents is void. See Ex parte R.S.C., 853 So. 2d 228, 235 (Ala. Civ. App. 2002)("A judgment is void under Rule 60(b)(4) only if the court that rendered the judgment lacked subject-matter jurisdiction [or] personal jurisdiction ...."). After conducting a hearing on the father's Rule 60(b)(4) motion, the trial court, on May 16, 2022, entered an order denying the father's motion. On June 15, 2022, the father filed his notice of appeal.

Rule 60(b)(4), Ala. Code 1975, provides, in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reason[] … (4) the judgment is void."

In Burgett v. Porter, 180 So. 3d 20, 21 (Ala. Civ. App. 2015), this court recognized that

"[o]ur review of the grant or denial of a Rule 60(b)(4) motion is de novo; such a motion challenges the underlying judgment as being void, so the question of the validity of the judgment is a purely legal one in which discretion has no place. Northbrook Indem. Co. v. Westgate, Ltd., 769 So. 2d 890, 893 (Ala. 2000); see also General Motors Corp. v. Plantation

6

Pontiac-Cadillac, Buick, GMC Truck, Inc., 762 So. 2d 859, 861 (Ala. Civ. App. 1999)."

In Campbell v. Taylor, 159 So. 3d 4, 8 (Ala. 2014), our supreme court

explained:

> "'"The standard of review on appeal from the denial of relief under Rule 60(b)(4) is not whether there has been an abuse of discretion. When the grant or denial of relief turns on the validity of the judgment, as under Rule 60(b)(4), discretion has no place. If the judgment is valid, it must stand; if it is void, it must be set aside. A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process. Satterfield v. Winston Industries, Inc., 553 So. 2d 61 (Ala. 1989)."'
>
> "'Insurance Mgmt. & Admin., Inc. v. Palomar Ins. Corp., 590 So. 2d 209, 212 (Ala. 1991). In other words, if the underlying judgment is void because the trial court lacked subject-matter …, then the trial court has no discretion and must grant relief under Rule 60(b)(4).'
>
> "Allsopp v. Bolding, 86 So. 3d 952, 957 (Ala. 2011). See also Bowen v. Bowen, 28 So. 3d 9, 14 (Ala. Civ. App. 2009)(holding that a Rule 60(b)(4) motion will be granted only when the prior judgment is void and not merely voidable)."

On appeal the father contends that the trial court erred in denying

his Rule 60(b) motion and refusing to set aside the January 28, 2015,

7

judgment as void. The father maintains that the grounds alleged by the maternal great-grandparents in the motion to intervene, in substance, were sufficient to allege that the children were dependent, and, therefore, that the trial court should have construed the motion to intervene as a dependency petition and transferred the case to a juvenile court, which has exclusive subject-matter jurisdiction over dependency matters. See § 12-15-114(a), Ala. Code 1975, and § 12-11-11, Ala. Code 1975 (requiring a court to transfer a case outside its subject-matter jurisdiction to an appropriate court with subject-matter jurisdiction within the same county). See also Moore v. Griffin, 256 So. 3d 1201 (Ala. Civ. App. 2018). He reasons that because a juvenile court, not the trial court, had jurisdiction to determine whether the children were dependent, the trial court did not have jurisdiction to enter its January 28, 2015, judgment determining custody of the children and as a result that judgment is void.

In Ex parte L.B.S., 333 So. 3d 681 (Ala. Civ. App. 2021), this court considered whether a motion to intervene filed by the Blount County Department of Human Resources ("DHR"), a nonparty to a custody-modification action initiated by a father in the Blount Circuit Court ("the circuit court"), was in substance a dependency petition that served to

8

deprive the circuit court of subject-matter jurisdiction over the action. In L.B.S., the circuit court had entered a judgment divorcing the parties and awarded sole custody of the parties' child to the mother. Subsequently, the circuit court entered a judgment modifying custody and awarding the parties joint legal custody of the child, the mother sole physical custody of the child, and the father visitation. Approximately two years after the modification judgment was entered, DHR filed a petition in the Blount Juvenile Court ("the juvenile court") asserting that the child was dependent. The juvenile court awarded the father temporary custody of the child. The father filed in the circuit court a petition to modify custody of the child, arguing that because the juvenile court had awarded him temporary custody of the child in the dependency action, a material change in circumstances had occurred warranting a modification of the most recent custody judgment entered by the circuit court. DHR filed in the circuit court a motion to intervene in the father's custody-modification action, asserting that it was "'a vital and interested party' in the modification action" and

> "that it had 'very real concerns that unless it is a party to the modification action, the previous findings of [the juvenile court], i.e., that custody should be awarded to the father, and the mother allowed supervised visitation may be

9

changed/modified by the parties prior to a final order being entered.'"

33 So. 3d at 683-84. The circuit court granted DHR's motion to intervene in the father's child-custody-modification action. The mother filed a petition for a writ of mandamus asking this court to direct the circuit court to vacate its order allowing DHR to intervene in the father's custody-modification action because, she said, the circuit court did not have jurisdiction over that custody-modification action.

We addressed the mother's argument, stating:

"The mother contends that DHR's intervention in the modification action converts that action into a 'de facto' dependency action over which the divorce court has no jurisdiction. In support of her contention, the mother relies on A.M. v. A.K., 321 So. 3d 1278 (Ala. Civ. App. 2020), which discussed an exception to a circuit court's continuing jurisdiction over custody matters decided pursuant to a divorce -- namely, that, '"in the event a genuine dispute between a parent and a third party arises as to the dependency of the child, the juvenile court assumes exclusive jurisdiction to adjudicate that dispute."' 321 So. 3d at 1281 (quoting P.S.R. v. C.L.P., 67 So. 3d 917, 922 (Ala. Civ. App. 2011)).

"It is well settled that a circuit court lacks original subject-matter jurisdiction to adjudicate the custody of a child in a proceeding in which the child has been alleged to be dependent. P.S.R., 67 So. 3d at 922. In A.M., this court held that courts must look to the substance of a pleading to determine whether it alleges the dependency of a child so as to invoke the exclusive jurisdiction of a juvenile court. In A.M.,

10

the mother had been awarded sole physical custody of her child when she and the father divorced. The mother died, and a maternal aunt sought custody of the child in the circuit court, alleging that the child's father was unfit to parent the child because he had been incarcerated after being convicted of a felony assault on the mother in the presence of the child, that he had failed to financially support the child, and that his relationship with the child had become strained. This court determined that the maternal aunt's petition was, in fact, a dependency petition and that, therefore, the circuit court lacked subject-matter jurisdiction to consider her request for custody.

"The mother in this case argues that DHR's motion to intervene essentially asserted a 'de facto' claim alleging dependency that, once granted, deprived the divorce court of jurisdiction. However, in reviewing the motion to intervene, it is clear that DHR did not seek a determination of dependency or seek custody of the child. Instead, DHR sought to intervene in the modification action to protect its interest in ensuring the safety of the child. In other words, DHR's motion to intervene cannot be construed as a mislabeled dependency petition that would invoke the exclusive jurisdiction of the juvenile court."

Ex parte L.B.S., 333 So. 3d at 685.

In accord with L.B.S., we must determine whether the maternal great-grandparents' motion to intervene initiated a de facto dependency action divesting the trial court of jurisdiction over the father's custody-modification action. First, we must consider whether the substance of the motion to intervene pleaded a genuine dispute between the parents, who had custody of the children, and the maternal great-grandparents as

11

to the dependency of the children, see, P.S.R., 67 So. 3d at 922 (quoting Ex parte Leo, 61 So. 3d 1042, 1047 (Ala. 2010))(recognizing that a child is dependent if the child is not "'receiving adequate care and supervision from those persons legally obligated to care for and/or supervise the child'"). In other words, we must determine if the maternal great-grandparents asserted facts indicating or implying that the children were dependent within the meaning of § 12-15-102(8), Ala. Code 1975. See A.M. v. A.K., 321 So. 3d 1278, 1281 (Ala. Civ. App. 2020)("If a complaint filed in circuit court asserts facts indicating or implying that a child is a dependent child, within the meaning of Ala. Code 1975, § 12-15-102(8), the complaint shall be treated as a dependency petition over which the circuit court has no subject-matter jurisdiction and the juvenile court has exclusive jurisdiction."). Section 12-15-102(8) defines a dependent child as:

> "a. A child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
>
> > "....
>
> > "2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.

"....

"4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.

"....

"6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child."

See also Ex parte L.E.O., 61 So. 3d 1042, 1047 (Ala. 2010)("A child is dependent if, at the time [the pleading alleging dependency] is filed in the juvenile court alleging dependency, the child meets the statutory definition of a dependent child.").

Our review of the allegations made in the maternal great-grandparents' motion to intervene leads us to conclude that the substance of the allegations did not constitute allegations that the children were dependent. The maternal great-grandparents alleged that the mother was unemployed and could not provide a stable home for the children and that, although the father was employed, he resided in another county and could not ensure that the children would attend school. Significantly, the maternal great-grandparents did not allege

that the children were not being cared for or supervised. Arguably, the maternal great-grandparents' allegations with regard to the mother may have been sufficient if true, to allege that the mother was unwilling or unable to care for the children.[3] The allegations with regard to the father were not sufficient, if true, to prove that the children were dependent. The allegations that the father had full-time employment and lived in another county did not imply that he had not been caring for or supervising the children. Rather, these allegations imply that due to his work schedule, the father may have had or in the future will have to arrange for childcare for the children and that the children may have had or may need in the future to change schools. These allegations do not rise to the level of allegations that the father was unable to care for or supervise the children, i.e., that the children were dependent. Instead, those allegations indicate that he may not be the best person to exercise custody of the children. Simply, the allegations made by the maternal great-grandparents at the time they filed their motion to intervene do not imply that the children were dependent; rather, they, at best, speculate

---

[3]The record appears to indicate that the mother and the children had been living with the maternal great-grandparents and that the children's needs were being met.

14

that the children might become dependent in the future. "A child is dependent if, at the time [the pleading alleging dependency] is filed …, the child meets the statutory definition of a dependent child." Ex parte L.E.O., 61 So. 3d at 1046. The maternal great-grandparents did not allege that the father was unwilling or unable "to provide for the care, support, or education of the children," see § 12-15-102(8)a.2., had failed, refused, or neglected to send the children to school, see § 12-15-102(8)a.4., or was "unable or unwilling to discharge his … responsibilities to and for the [children]," see § 12-15-(8)a.6. A fair reading of the maternal great-grandparents' pleading reveals that the maternal great-grandparents did not seek a dependency determination but, instead, only intervention in the custody-modification action to allow them to seek an award of custody of the children. Therefore, the maternal great-grandparents' motion to intervene did not initiate a de facto dependency action divesting the trial court of its jurisdiction. Additionally, because the trial court retained jurisdiction over the custody-modification action, the trial court acted within its jurisdiction when it considered the parties' agreement to allow the maternal great-grandparents to obtain custody of the children and, in accord with the parties' agreement, awarded custody of the children to

the maternal great-grandparents.

It is not the role of a circuit court or an appellate court, when it reviews factual allegations in a pleading filed by a nonparty in a custody-modification action initiated by a parent, to recast the non-party's pleading in a manner so as to convert a parent's custody-modification action into a dependency action that negates the choice of parents to agree to a remedy for a simple dispute about their children. Parents have a fundamental right "to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66 (2000). In this case, the father and the mother exercised their fundamental right to make such a decision about the care, custody, and control of their children, and they decided in an agreement to allow the maternal great-grandparents to have custody of the children. The trial court had jurisdiction to enter a judgment memorializing the parties' agreement.

For the foregoing reasons, the trial court properly denied the father's request for Rule 60(b)(4) relief, and the judgment is affirmed.

AFFIRMED.

Hanson and Fridy, JJ., concur.

Moore and Edwards, JJ., concur in the result, without opinions.